IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMPLER CONSULTING, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:05-cv-0452 |
| ) | Judge Nora Barry Fischer |
| THOMAS MICHAEL WALL and BETTER ) | |
| ENTERPRISE SOLUTIONS CORP., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Before this Court is a Motion for Leave of Court to File Compulsory Counterclaim ("Defendants' Motion"), filed on behalf of defendants Thomas Michael Wall ("Wall") and Better Enterprise Solutions Corp. ("BESCorp") (collectively, "Defendants") [DE 43]. Defendants seek to bring counterclaims against plaintiff Simpler Consulting, Inc. ("Plaintiff") for breach of contract, intentional interference with an existing contractual relationship and intentional interference with a prospective contractual relationship. For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

**I.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 13(f), "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of the court set up the counterclaim by amendment." Rule 13(f) is "especially flexible" in that its clause allowing amendment "when justice so requires" permits courts to exercise broad discretion and permits amendment whenever the court deems it desirable. *Perfect Plastics Indust*.

*v. Cars & Concepts, Inc.*, 758 F.Supp. 1080, 1082 (W.D.Pa. 1991).

In deciding a motion for leave to file a compulsory counterclaim, this Court must consider whether Defendant has acted in good faith and has not unduly delayed filing the counterclaim, whether undue prejudice would result to Plaintiff if the counterclaim is permitted, and whether the counterclaim raises meritorious claims. *Id.* at 1081. The argument for allowing amendment is particularly compelling where, as here, the counterclaim asserted is compulsory because "an omitted compulsory counterclaim cannot be asserted in subsequent cases and the pleader will lose the opportunity to have the claim adjudicated." *Id.* Because Plaintiff does not challenge the compulsory nature of Defendants' proposed counterclaims, this Court need not address this issue. However, Plaintiff does argue that Defendants' proposed counterclaims are without merit and are therefore futile. Whether a claim is meritorious is determined by applying the standards of Federal Rule of Civil Procedure 12(b)(6). *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 565, 566 (E.D.Pa. 1994).

## II. Analysis

Here, Plaintiff argues that Defendants' Motion should be denied because to grant Defendants' Motion would result in undue prejudice to Plaintiff and because Defendants' counterclaims are futile. The Court will address each of these arguments in turn.

### A. Defendants' Delay is Not Dispositive and Undue Prejudice To Plaintiff Will Not Result From Granting Defendants' Motion.

Although Defendants arguably delayed in filing their Motion, the delay was not so great as to warrant preclusion of the counterclaims, particularly in this case, where the counterclaims are compulsory. *See Perfect Plastics Indust.*, 758 F.Supp. at 1082 ("the mere passage of time between

an original filing and an attempted amendment is not sufficient reason for the denial of the motion."). Further, granting Defendants' Motion will not cause undue prejudice to Plaintiff. As Defendants argue in their brief, much of the discovery needed to support these counterclaims has already occurred. Moreover, given that this case was filed two and a half years ago, that the parties have already had eighteen months for discovery, and that this case was further delayed as the result of its transfer from Judge Hardiman to the undersigned Judge as well as this Court's subsequent attempt to send the parties to mediation or settlement discussions, which the parties represented to the Court would not be fruitful, the Court will not permit discovery to continue for "months" or "years" as Plaintiff suggests. (Document No. 44 at p. 2). In addition, that Plaintiff will have to spend additional money to defend against these counterclaims is insufficient to defeat Defendants' Motion as the counterclaims are interrelated with Plaintiff's claims and Plaintiff could have foreseen that it would have to defend the allegations in the proposed counterclaims. *Hellauer v. NAFCO Holding Co., LLC*, 1998 U.S. Dist. LEXIS 9102 (E.D.Pa. 1998). Finally, a trial date has not been set, and thus, prejudice will not result from rescheduling the same. *See Technographics, Inc. v. Mercer Corp.*, 142 F.R.D. 429, 431 (M.D.Pa. 1992). Accordingly, any prejudice which will inure to Plaintiff as the result of Defendants' delay in filing is minimal and does not in and of itself justify denying Defendants' Motion.

  **B.** **Futility of Defendants' Counterclaims**

Plaintiff argues that Defendants' counterclaims for breach of contract, intentional interference with an existing contractual relationship and intentional interference with a prospective

contractual relationship are futile and that Defendants' Motion should be denied on that basis.[1]

As noted by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend may be denied if the amendment would be futile. *See Id. at* 182. "Futility" challenges an amendment's legal sufficiency. In assessing futility, the Court applies the same standard of legal sufficiency as applied under Rule 12(b)(6). *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss"). Accordingly, the Third Circuit has noted that "an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *Burlington*, 114 F.3d at 1434); *see also Warner-Lambert Co. v. Teva Pharm., Inc.*, 289 F.Supp.2d 515, 544-45 (D. N.J. 2003) (denying defendant's motion for leave to amend its answer to add an additional inequitable conduct defense as futile because plaintiff "would be entitled to summary judgment in its favor on the defense"). Therefore, in considering a motion for leave to file counterclaims under the standard for a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the Defendants (as the moving party). *Doswell v. City of Pittsburgh*, Civil Action No. 07-761, 2007 WL 2907886, at *1 (W.D. Pa. Oct. 2, 2007) (citing *Hasoel v. State Farm Mut. Auto. Ins. Co.*, 2007

---

[1] Pursuant to paragraph 14.6 of the settlement agreement between the parties that is the subject of this dispute, "all matters or disputes relating to the validity, construction, performance or enforcement hereof, will be governed, construed and controlled by and under the laws of the Commonwealth of Pennsylvania without regard to principles of conflicts of laws." Accordingly, in determining whether Defendants' claims are futile, this Court applies Pennsylvania law. (Document No. 44-3).

WL 2030272 at *1 (3d Cir. July 16, 2007)).

As a threshold point, the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) rejected the famous and often quoted pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1969, *abrogating Conley v. Gibson*, 335 U.S. 41(1957) (providing that "this famous observation has earned its retirement"). In *Twombly*, the Supreme Court implemented a fact-based, plausibility-in-pleading standard:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of cause of action will not do . . . Factual allegations must be enough to raise a right to relief above a speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 127 S.Ct. at 1965 (internal citations omitted; first alteration added; second alteration in original).  The Court further explained that *Conley's* "no set of facts" language allowed a "conclusory statement of a claim" to survive a motion to dismiss "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968.  On the contrary, the Court stated that "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 1969.  In conclusion, the Court explained that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**1.     Defendants' Claims Were Pled Within the Statute of Limitations.**

Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years. 42 Pa. Cons. Stat. Ann. 5525(8). The statute of limitations for tort claims, including interference with contractual relations, is two years. 42 Pa. Cons. Stat. Ann. § 5524(3); *see also Bednar v. Marino,* 646 A.2d 573, 577 (Pa. Super. 1994). A "cause of action accrues 'as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.'" *Elliott Reihner Siedzikowski & Egan, P.C. v. Pa. Emples. Benefit Trust Fund*, 29 Fed. Appx. 838, 842 (3d Cir. 2002). In other words, the statute of limitations commences upon the defendant's first act interfering with the contract. *Id.* Further, a counterclaim amended pursuant to Rule 13 will relate back to the date of the original answer when the counterclaim arises out of the same transaction that was pled in the answer. *Perfect Plastics Indust.*, 758 F.Supp. at 1083.

Defendants allege that their breach of contract claim accrued on March 20, 2005. (Document No. 43-2 at ¶ 11). Defendants' Answer to Amended Complaint ("Defendants' Answer") was filed on April 6, 2006. (Document No. 22).[2] Accordingly, because Defendants' counterclaim for breach of contract was filed within four years of the time it accrued, it is timely. Further, Defendants allege that their claim for intentional interference with an existing contract accrued on April 5, 2005. (Document No. 43-2 at ¶ 13). As Defendants' Answer was filed less than two years later, said counterclaim is timely. Finally, Defendants allege that their claim for intentional interference with a prospective contract accrued in or around April of 2005. (Document No. 43-2 at ¶¶ 20-23). As

---

[2]Defendants did not file an answer to the original complaint filed in this action.

Defendants' Answer was filed less than two years later, Defendants' counterclaim for same is also timely. Given that these potential claims are not time barred, the Court believes that the purpose of the Federal Rules of Civil Procedure of just and expeditious handling of cases is met by addressing these potential counterclaims.

### 2. Defendants' Breach of Contract Claim.

Under Pennsylvania law, in order to state a claim for breach of contract, a party must plead (1) the existence of a contract; (2) that a duty imposed by such contract was breached; and (3) that damages resulted from such breach. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005). Defendants' breach of contract claim is sufficient in that it alleges that Plaintiff breached the settlement agreement by and between Plaintiff and Wall by disclosing certain terms of the settlement agreement in a letter to a NAVSEA representative, Naval Service Warfare Center, Crane Division Captain Mark Welsh and others and that such breach resulted in damages to Wall. (Document No. 43-2 at ¶¶ 11, 33-35).

Plaintiff argues that Defendants' breach of contract claim is futile, however, because Plaintiff's conduct in informing NAVSEA of such terms of the settlement agreement was privileged and justified. (Document No. 44 at p. 9). In support of this argument, Plaintiff argues that an action is privileged when an actor believes that its legally protected interest may otherwise be impaired and that Plaintiff's letter to NAVSEA "served only to protect its rights under the contract." *Id.* at p. 10. While Plaintiff cites several cases in support of its position that its act was privileged, none are particularly persuasive in demonstrating futility in the instant case. Each involved a fact intensive inquiry into the circumstances regarding the conduct and intent of the parties and were decided on summary judgment motions. *See, e.g. Peoples Mortgage Co., Inc. v. Fed'l Nat'l Mortgage Assoc.*,

856 F.Supp. 910, 941 (E.D.Pa. 1994). Further, as the issue of privilege is closely related to intent to harm, whether an actor believes in good faith that his legally protected interest is impaired can only be determined by a fact intensive inquiry. *Schmidt, Long & Assoc. v. Aetna U.S. Healthcare, Inc.*, 00-3683, 2001 U.S.Dist. LEXIS 10709 *11 (E.D.Pa. Jul. 26, 2001). In order to succeed at this stage, Defendants' counterclaim need only allege facts sufficient to survive a Motion to Dismiss. Such fact intensive inquiry is not appropriate at this juncture. Since Defendants properly allege a claim for breach of contract, such claim is not futile.

### 3. Defendants' Claims for Intentional Interference with an Existing Contractual Relationship.

In order to state a claim for intentional interference with a contractual relationship, a party must allege that another has (1) intentionally and improperly interfered with the performance of a contract between another and a third person (2) by inducing or otherwise causing the third person not to perform the contract. *Alder, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1184 (Pa. 1978) (*citing* Restatement (Second) of Torts § 766 (1979)).

Defendants' claim for intentional interference with an existing contractual relationship arises out of Plaintiff's alleged interference with the contractual relationship between Defendants and Northrup Grumman, pursuant to which Defendants performed services for NAVSEA (the "NAVSEA Contract"). (Document No. 43-2 at ¶37). Defendants allege that Plaintiff interfered with the NAVSEA Contract when Plaintiff filed its complaint with this Court and subsequently, when

Plaintiff notified Northrup Grumman by letter that Plaintiff was suing Defendants for copyright infringement. (Document No. 43-2 at ¶¶ 12, 13).[3]

Plaintiff argues that Defendants' claim is futile because Plaintiff had an absolute privilege to file a lawsuit. (Document No. 44 at p. 11). Under Pennsylvania law, a party is privileged, under the principle of judicial immunity, to file a lawsuit. *Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986). Indeed, any statements contained in pleadings, as well as statements made before the court, are privileged. *Id.* Such privilege, however, does not necessarily extend to extra-judicial statements, for example, statements made in a letter, even if such statements are related to the lawsuit. *Id.* In order to be privileged, a communication must bear a certain relationship to the proceeding. *Id.* Specifically, a communication relating to a judicial proceedings must be pertinent and material to the redress sought and the communication must have been issued in the regular course of the proceedings. *Id.* Where such communication is made to a third party with no direct interest in the judicial proceedings, such communication is not privileged. *Id.* at 357. Thus, while the fact that Plaintiff filed a lawsuit does not give rise to a claim for intentional interference with a contractual relationship, Plaintiff's communication with NAVSEA regarding the lawsuit is not necessarily privileged and may be sufficient to set forth a basis for the claim of intentional interference with an existing contractual relationship. Accordingly, Defendants' counterclaim is not futile and, at this stage, should proceed to discovery.

---

[3]Defendants' Motion states that Plaintiff "interfered with their existing contractual relationship with NAVSEA by asserting frivolous claims in its Complaint and Amended Complaint without performing due diligence. . ." (Document No. 43 at p. 4). Defendants, however, do not allege in their counterclaim that Plaintiff asserted frivolous claims for the purpose of thwarting the contractual relationship between Defendants and NAVSEA.

### 4. Defendants' Claim for Intentional Interference With a Prospective Contractual Relationship.

Defendants also allege a claim for intentional interference with a prospective contractual relationship. In order to establish a cause of action for intentional interference with a prospective contractual relationship, a party must allege: (1) a prospective contractual relation; (2) the purpose or intent to harm the other party by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defending party; and (4) the occasioning of actual damage resulting from such conduct. *Glenn v. Point Park College*, 272 A.2d 893, 898 (Pa. 1971). *See also Silver*, 894 F.2d at 602. This rule has been applied by the Third Circuit. *See Kachmar v. Sungard Data Systems*, 109 F.3d 173 (3d Cir. 1997) (holding that plaintiff's discussions with a law firm led to a more definite employment prospect and established an interference with prospective contractual relations claim); *Schulman v. J.P. Morgan Inv. Management, Inc.*, 35 F.3d 799 (3d Cir. 1994) (holding that plaintiff had not established a tortious prospective contractual interference claim because the defendant, as mortgagee, was privileged to interfere in prospective economic advantage in order to protect its own financial interest).

Defendants allege that in January of 2005, they began discussions with The George Group, one of Plaintiff's largest competitors, about a potential merger between BESCorp and The George Group (Document No. 43-2 at ¶ 19). In April of 2005, Defendants allege that BESCorp and The George Group were close to entering an agreement regarding the merger of the two companies. *Id*. at ¶ 20. Pursuant to the proposed agreement, The George Group had made a written proposal to BESCorp worth approximately $16,000,000, payable over a five year period. *Id*. Defendants allege that during February or March of 2005, Plaintiff became aware of the potential merger between The

George Group and BESCorp. *Id*. at ¶ 21.  Further, Defendants allege that, as a result of hearing about the instant action, The George Group withdrew its $16,000,000 proposal offer to Defendants. *Id*. at ¶23.  Defendants also allege that in withdrawing its proposal, the president of The George Group, Mr. James Works, "stated that the worst thing a consulting company can be accused of is stealing the copyrighted or proprietary information of another consulting company." *Id*.  Finally, Defendants allege that several of Plaintiff's former employees/executives informed Defendant Wall, prior to the filing of Plaintiff's Complaint, that Plaintiff's CEO, Mr. Ed Constantine, "was out to get [Defendant] Wall." *Id*. at ¶24.

While Defendants have alleged (1) a prospective contractual relationship with The George Group; (2) evidence of Plaintiff's purpose or intent to harm the Defendants by preventing the relationship from occurring; (3) that The George Group terminated the relationship when it learned that Plaintiff had filed a lawsuit against Defendants; and (4) that Defendants suffered damages as the result of the same, Defendants have not alleged the absence of privilege or justification on the part of Plaintiff.  Indeed, it appears that Defendants' sole basis for this claim is that Plaintiff filed a lawsuit against Defendants.  (Document No. 43-2 at ¶ 23).  Defendants do not allege that Plaintiff informed The George Group of the lawsuit in any manner other than filing the complaint in this case with the Court.  As set forth above, a plaintiff has an absolute privilege to file a lawsuit. *Post*, 507 A.2d at 353.  Filing such a lawsuit, absent more, does not rise to the level required to support a claim for intentional interference with a prospective contractual relationship.

Further, Defendants state in their Motion that in conducting due diligence to ascertain the merits of any potential claim, Defendants spoke with individuals from The George Group, among others, to determine whether their claim was valid.  (Document No. 43 at ¶ 11).  Despite this fact,

11

Defendants allege only that Plaintiff knew of the proposed merger and that The George Group learned of the lawsuit. (Document No. 43-2 at ¶¶ 21, 23). Defendants fail to allege, even on information and belief, that Plaintiff informed The George Group of the lawsuit, and the Court is left to speculate.

Additionally, Defendants do not allege in their counterclaim that Plaintiff filed its complaint for the purpose of disrupting negotiations between Defendants and The George Group, although such an allegation might give rise to a claim for intentional interference with a prospective contractual relationship. *Silver v. Mendel*, 894 F.2d 598 (3d Cir. 1990) (filing lawsuit without probable cause to believe in the merit of the same and for a purpose other than seeking redress from the court is not privileged). Although Defendants state in a footnote that Plaintiff filed its complaint for the purpose of disrupting negotiations between Defendants and the George Group (Document No. 43 at p. 4), this allegation is conspicuously absent from their counterclaim. The Court assumes that this is because Defendant did not have a sufficient basis upon which to make this claim. Indeed, in their counterclaim, Defendants merely allege that Plaintiffs "deliberately or recklessly failed to perform due diligence prior to filing the complaint." (Document No. 43-2 at ¶ 28). The Court does not discount the seriousness of this allegation, but notes that it is far from alleging that Plaintiff filed its complaint for an improper purpose. Therefore, because Defendants have not alleged an absence of privilege or justification by Plaintiff, Defendants' counterclaim for intentional interference with a prospective contractual relationship fails to state a claim upon which relief may be granted and, therefore, this Court will not permit Defendants to amend their pleading to include this counterclaim as drafted. Defendants may, however, amend Count III of their proposed counterclaim to conform with this Court's ruling.

### III. Conclusion

Accordingly, Defendants' Motion is GRANTED as to Counts I and II and DENIED without prejudice as to Count III. Defendants may amend Count III to conform with this Court's Opinion. An appropriate Order will follow.

Dated:		November 1, 2007

					s/ Nora Barry Fischer_____
					Nora Barry Fischer
					United States District Judge